UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ELISA D. IRMINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-137-CCS |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court

is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 & 12]

and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 16 &

17]. Elise D. Irminger ("the Plaintiff") seeks judicial review of the decision of the Administrative

Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting

Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court

will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On March 20, 2012, the Plaintiff filed an application for disability insurance benefits

pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of

disability which began February 3, 2010. [Tr. 34, 155-57]. After her application was denied

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner
Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is
substituted as the Defendant in this case.

initially and upon reconsideration, the Plaintiff requested a hearing.  [Tr. 122].  A hearing was held before the ALJ on May 1, 2014 [Tr. 53-101], and on August 21, 2014, the ALJ found that the Plaintiff was not "disabled" [Tr. 29-52].  The Appeals Council denied the Plaintiff's request for review [Tr. 9-14], and the ALJ's decision became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on February 24, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act.  [Doc. 1].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the

Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## III. ANALYSIS

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

3

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d 525. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

The Plaintiff contends that the ALJ committed two errors. First, the Plaintiff submits that her RFC is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of her treating physician, Robert Kasprzak, D.O., and failed to identify the substantial evidence that supports the specific limitations incorporated into the Plaintiff's RFC. [Doc. 12 at 14-15]. Second, the Plaintiff maintains that the ALJ failed to properly assess the Plaintiff's credibility. [*Id.* at 15]. The Court will address each argument in turn.

### A.       Treating Physician, Robert Kasprzak, D.O.

Dr. Kasprzak has been the Plaintiff's primary care physician since March 2010. [Tr. 362]. On June 12, 2012, Dr. Kasprzak completed a "Multiple Impairment Questionnaire," wherein he opined on the Plaintiff's impairments and their limiting effects. [Tr. 472-79]. The Plaintiff's

diagnoses included fibromyalgia, chronic depression, migraine headaches, irritable bowel syndrome ("IBS"), and interstitial cystitis. [Tr. 472]. These diagnoses were based upon a review of examination findings made by other treating specialists. [Tr. 472-73]. Dr. Kasprzak noted that the largely negative laboratory and MRI results yielded by these specialists were "in keeping" with fibromyalgia, migraine headaches, and gastrointestinal problems. [*Id.*]. The Plaintiff also experienced chronic, moderate pain in her right arm, shoulder, and neck. [Tr. 473-74].

In terms of functional limitations, Dr. Kasprzak opined that in an eight-hour workday, the Plaintiff could sit for six hours and stand and/or walk up to one hour, but would need to move around every hour for at least five minutes. [Tr. 474-75]. The Plaintiff could occasionally lift or carry up to 10 pounds and would be moderately-to-markedly limited doing repetitive hand movements, such as reaching, handling, and fingering. [Tr. 475-76]. She would also need to avoid fumes, extreme temperatures, heights, and activities involving pushing, pulling, kneeling, bending, and stooping. [Tr. 476, 478]. Dr. Kasprzak concluded that the Plaintiff's frequent pain and other symptoms would interfere with her ability to maintain a full-time competitive job, even one involving low stress, on a sustained basis, and she would be required to take unscheduled breaks every hour for at least five minutes and would likely be absent from work more than three times a month. [Tr. 476-78]. Dr. Kasprzak followed-up with a letter on July 25, 2013, noting that the Plaintiff's condition remained the same and her symptoms had recently flared-up as a result of her pregnancy and subsequent delivery. [Tr. 481].

In the disability determination, the ALJ concluded that the Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b), except she cannot tolerate exposure to pulmonary irritants, she is capable of moderate stress jobs but would need a break from her workplace when she gets a headache, and she can perform basic work activities and would be absent from the

workplace one time a month. [Tr. 39]. In assessing the Plaintiff's RFC, the ALJ assigned "no weight" to Dr. Kasprzak's opinion. [Tr. 44]. The ALJ found that the limitations assessed therein were not supported by the physician's treatment notes which consistently indicated that the Plaintiff appeared in "no acute distress." [Tr. 44]. Moreover, the ALJ found that the opinion reflected, almost verbatim, the Plaintiff's subjective account of her abilities and symptoms. [*Id.*]. On this basis, the ALJ concluded that the limitations appeared to be assessed out of sympathy for the Plaintiff rather than objective medical evidence. [*Id.*].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996

WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

The Plaintiff argues that the ALJ failed to identify any substantial evidence that contradicted Dr. Kasprzak's opinion and argues that appearing in "no acute distress" during office visits does not amount to "good reason." [Doc. 12 at 16, 18, 21]. The Plaintiff submits that the ALJ's assignment of "great weight" to the opinion of treating neurologist Timothy Braden, M.D., and "some weight" to the opinions from the non-examining state agency physicians does not constitute substantial evidence that contradicts Dr. Kasprzak's opinion, because Dr. Braden's opinion only addressed limitations due to the Plaintiff's headaches and the non-examining state agency physicians found the Plaintiff's file contained insufficient evidence to find the Plaintiff had any severe impairments. [*Id.*]. The Court is not persuaded by the Plaintiff's interpretation of the evidence.

In reaching this conclusion, the Court finds that the Plaintiff's appearance during examinations, *i.e.*, findings of "no acute distress," are relevant and appropriate considerations for the ALJ to take into account when assessing a medical opinion. *See Shepherd v. Colvin*, No. 7:15-CV-100-KKC, 2017 WL 1179954, at *2 (E.D. Ky. Mar. 29, 2017) (finding treatment notes that documented "no acute distress" and other normal examination findings amounted to "good reason" by the ALJ for rejecting a treating physician's opinion); *see also Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes.").

Moreover, and contrary to the Plaintiff's assertion, the ALJ's decision identifies evidence that contradicts Dr. Kasprzak's opinion. In this regard, the ALJ gave "great weight" to Dr.

Braden's finding that the Plaintiff could handle moderate stress, that her migraine headaches did not produce any complicated factors, and that she would only be absent from the workplace about once a month. [Tr. 44, 274-79]. Although Dr. Braden only opined on the severity and limiting effect of the Plaintiff's migraine headaches, his opinion constitutes substantial evidence that undermines the opinion of Dr. Kasprzak who assessed limitations, in part, on the basis of the Plaintiff's migraine headaches. [Tr. 472-73, 478]; *see Swett v. Comm'r of Soc. Sec.*, 886 F. Supp. 2d 656, 660 (S.D. Ohio 2012) ("Where there are conflicting opinions from various medical sources, it is the ALJ's function to evaluate the medical evidence and determine Plaintiffs' RFC.") (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)).

As to the other impairments Dr. Kasprzak noted would produce work-related limitations, specifically fibromyalgia and gastrointestinal problems, the ALJ's decision discussed in great detail that there was nothing in the medical record establishing the existence of fibromyalgia under the criteria set forth in Social Security Ruling 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012), which requires that a claimant satisfy the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. [Tr. 35]. Indeed, treating rheumatologist James Burns, M.D., specifically declined to make a definitive diagnosis of fibromyalgia (or any rheumatology disorder) and was of the opinion that the Plaintiff would not qualify for disability benefits "based on fibromyalgia."[2] [Tr. 35, 660, 667].

---

[2] The Plaintiff mistakenly submits that Dr. Burns diagnosed fibromyalgia during a treatment visit on October 6, 2011. [*See* Doc. 12 at 10-11]. Dr. Burns noted that "[c]urrent information is more likely to represent fibromyalgia," but remained of the opinion that a definitive diagnosis could not be reached as of February 24, 2012. [Tr. 660, 664]. The ALJ acknowledged findings made by Dr. Burns and Dr. Kasprzak as to complaints of pain and tenderness upon examination at times. [Tr. 35]. But as concluded by the ALJ, the medical evidence does not meet the requisite diagnostic criteria for fibromyalgia as a medical determinable impairment.

The ALJ correctly observed that there was no evidence that the Plaintiff met the requisite diagnostic criteria, including the lack of positive tender point testing or areas of persistent tenderness for a three-month period. [Tr. 35 (citing Sec. Sec. Rul. 12-2p, 2012 WL 3104869, at *2)]. The ALJ observed that Dr. Kasprzak's treatment notes mentioned fibromyalgia in a cursory manner and that his medical opinion attributed negative laboratory and MRI testing as "in keeping" with fibromyalgia. [Tr. 35]. But as the ALJ correctly surmised, "This information is not sufficient to establish the existence of fibromyalgia" and a diagnosis alone does not establish fibromyalgia as a medically determinable impairment. [Tr. 35]; *see Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) ("[A] *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits.") (emphasis in original).

Similarly, the ALJ sufficiently discussed the medical evidence pertaining to the Plaintiff's gastrointestinal problems, including IBS, gastritis/colitis, duodenal ulcers, and mild biliary dysfunction, and she reasonably concluded that these aliments appeared to be acute conditions that resolve or remained intermittent. [Tr. 35-36]. The ALJ discussed the relevant medical records, including those from treating gastroenterologist Meade Edmunds, M.D., and found that the Plaintiff's gastrointestinal status appeared stable, testing generally unremarkable, and improvement was shown with the use of probiotics and discontinuing Meloxicam which was linked to a more recent bout of abdominal pain. [Tr. 36, 427, 429, 437-45, 492-97, 609, 619, 626, 645].

The ALJ's finding regarding fibromyalgia and gastrointestinal problems is also supported by the non-examining state agency physicians who found the record lacked sufficient evidence to establish a medical determinable impairment that was severe. [Tr. 373, 405]. The ALJ gave their opinions "some weight," departing from their findings only with respect to the Plaintiff's migraine

9

headaches which the ALJ found posed more than a minimal limitation. [Tr. 44].

The Plaintiff further suggest that the ALJ substituted his own unqualified assessment of the record because in rejecting Dr. Kasprzak's opinion, the ALJ did not cite to any other medical opinion that specifically opined that the Plaintiff could perform the exertional demands of light work. [Doc. 12 at 19]. "The Sixth Circuit has repeatedly upheld ALJ decisions where the ALJ rejected medical opinion testimony and determined RFC based on objective medical evidence and non-medical evidence." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (rejecting the argument that an ALJ's RFC determination must be based on a medical advisor's assessment). "Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017); *see Thomas v. Comm'r of Soc. Sec.*, No. 11-15450, 2013 WL 1250721, at *4 (E.D. Mich. Feb. 25, 2013) ("The determination of an individual's RFC need not be based on a medical opinion because it is a determination reserved to the ALJ as fact-finder for the Commissioner."), *adopted by*, No. 11-CV-15450, 2013 WL 1250649 (E.D. Mich. Mar. 26, 2013), *aff'd*, 550 F. App'x 289 (6th Cir. 2014). Indeed, the ALJ alone is tasked with assessing a claimant's RFC, 42 U.S.C. § 423(d)(5)(B), based on "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)," Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ's discussion of the medical evidence, including treatment rendered by other specialists, as well as activities the Plaintiff engaged in, which will be addressed more fully below, provides a reasoned explanation for the ALJ's finding that the Plaintiff could perform light work. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("Any record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by

medical diagnostics or if it is inconsistent with the record.").

Finally, the Plaintiff takes issue with the ALJ's conclusion that Dr. Kasprzak's opinion was rendered out of sympathy for the Plaintiff because the opinion appeared to be based on the Plaintiff's subjective complaints. [Doc. 12 at 16-17]. The Court observes that Dr. Kasprzak's opinion does reflect many of the Plaintiff's self-reported symptoms and limitations expressed during a May 2012 office visit in which the Plaintiff presented to Dr. Kasprzak for the purpose of completing disability paperwork. [*Compare* Tr. 304-06 *with* Tr. 472-79]. Regardless, the ALJ's ultimate conclusion that the opinion was not supported by Dr. Kasprzak's treatment notes is substantiated by the record and constitutes "good reason." *See Leeman*, 449 F. App'x at 497. While Dr. Kasprzak purported to base his opinion on examinations findings made by the Plaintiff's treating specialists, many of these specialists, as discussed above, opined mild effects from the Plaintiff's migraine headaches, improved gastrointestinal problems, and an inconclusive diagnosis of fibromyalgia.

"If substantial evidence supports the Commissioner's decision, this Court will defer to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). The Court finds that the ALJ's decision identifies substantial evidence that contradicts Dr. Kasprzak's opinion, as well as his interpretation of the medical evidence of record. Accordingly, the Court finds the Plaintiff's argument that the ALJ did not properly weigh Dr. Kasprzak's opinion to be without merit.

### B.     Credibility Determination

The Plaintiff also maintains that substantial evidence does support the ALJ's finding that the Plaintiff's subjective allegations are not entirely credible.

11

An ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Therefore, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* Nonetheless, the ALJ's finding must be supported by substantial evidence. *Id.*

In evaluating a claimant's subjective allegations as to the intensity and persistence of symptoms, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 1529(c)(3).

The ALJ found the Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" for several reasons, including that the medical evidence demonstrated that she did not suffer from certain aliments, she showed improvement over the course of treatment for her impairments, and she engaged in daily living activities that were not consistent with a finding of disability. [Tr. 42-44].

The Plaintiff argues that treatment notes documenting that she was in "no acute distress" does not support a finding of "not disabled" where the record contains evidence that she suffers from carpal tunnel syndrome, fibromyalgia, and gastrointestinal problems. [Doc. 12 at 21]. But the ALJ addressed these alleged impairments, finding no positive diagnosis of fibromyalgia as

opined by the Plaintiff's treating rheumatologist, Dr. Burns. [Tr. 35, 660, 664]. Moreover, the record likewise does not contain a positive diagnosis of carpal tunnel syndrome. The ALJ observed that diagnostic test results could not identify an underlying basis for the Plaintiff's upper extremity and hand pain, and there was no indication that the pain persisted for the requisite twelve-month period. [Tr. 34-35]. The only evidence cited by the Plaintiff to the contrary is a treatment note by Dr. Burns, indicating positive right-sided Phalen's and Tinel's signs. [Doc. 12 at 21 (citing Tr. 666)]. But again, Dr. Burns opined that he could not reach any conclusive diagnoses. [Tr. 660]. In addition, the Plaintiff's arguments that she suffers from gastrointestinal issues was also sufficiently addressed by the ALJ who found that many of that the Plaintiff's conditions were acute conditions that resolved or remained intermittent. [Tr. 35-36]. Furthermore, the fact that the Plaintiff appeared in "no acute distress" during office visits was simply one factor the ALJ considered in her overall determination that the record simply did not substantiate the gravity of the Plaintiff's claims.

The Plaintiff also contends that she gave uncontradicted testimony that her activities of daily living are severely limited. [Doc. 12 at 22]. But the ALJ noted that the Plaintiff traveled out-of-state for a camping trip and almost exclusively cares for her young child during the day which requires lifting and caring up to twenty pounds, as well as bending, squatting, and other activities. [Tr. 43]. While these activities may not amount to substantial gainful activity, and the Plaintiff should not be chastised for providing the necessary care of a young child, it does demonstrate that the Plaintiff is at least capable of functioning physically and doing activities in her personal life that she has otherwise alleged she cannot perform in the workplace.

The ALJ's discussion of the medical evidence, opinions offered from treating physicians, the lack of conclusive diagnoses for impairments which the Plaintiff claims are debilitating, and

some of the Plaintiff's daily living activities, taken together, amounts to substantial evidence that supports the ALJ's decision to find the Plaintiff less than fully credible. Therefore, the Court finds the Plaintiff's assignment of error in this regard is not well-taken.

## VI.     CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 11**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

  s/ C. Clifford Shirley, Jr.
United States Magistrate Judge